**STATE of Missouri, Plaintiff-Respondent,**

v.

**Paul Richard JINES, Defendant-Appellant.**

No. 35952.

Missouri Court of Appeals, St. Louis District, Division Two.

Aug. 3, 1976.

Rader & Richey, Rader, Smith & Calvin, Cape Girardeau, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Chief Counsel, Crim. Div., Asst. Atty. Gen., Sheila K. Hyatt, Asst. Atty. Gen., Jefferson City, A. J. Seier, Pros. Atty., Cape Girardeau, for plaintiff-respondent.

DOWD, Judge.

Defendant was convicted by a jury of kidnapping, Section 559.240 RSMo 1969, in two counts and sentenced to two years imprisonment on each count, the sentences to run concurrently. He appeals.

■ We review the evidence in the light most favorable to the state and in conformance with the verdict. *State v. Wiley*, 522 S.W.2d 281, 292[19] (Mo. banc 1975); *State v. Wilborn*, 525 S.W.2d 87, 90[2] (Mo.App. 1975).

On January 16, 1973 at about 3 p. m., two young girls, Miss Smith, age 15 and Miss Brown,[1] age 17, were walking down Main Street in Cape Girardeau. Defendant, driving a late model brown station wagon, stopped and asked for directions to the water plant. He drove away and the two girls continued their walk. About a block later he stopped again and asked that the directions be repeated. Miss Brown explained the directions again. Defendant asked, "Would you girls like to show me?" Miss Brown replied, "No, we have got to get home." At this point defendant pulled a gun from under a topcoat that was laying on the front seat and said, "Get in . . . I'm ordering you girls in the car."

The girls got in the back seat of the car. Defendant rolled up the windows and locked the doors. Then he turned the car around and drove north on Main Street. Defendant told them a "buddy" had gotten shot in connection with a bank robbery and asked them whether they had heard anything about it on the radio. He also inquired as to where area hospitals were located. He stated that if they cooperated, everything would be all right, but also said that if his "buddy" were alive in the hospital, it would not matter if he shot the girls since the "buddy" had enough evidence to put him (defendant) "away." He further stated he could kill the girls and no one would ever know. He drove to the water plant, turned around and drove in the opposite direction, then pulled off the shoulder of the road. He told the girls to close their eyes and he put masking tape over their eyes. The tape extended vertically across their eyes and into their hair. While taping the Smith girl's eyes, she started screaming and the defendant put a gun to her head and said he would shoot her. Then he told them to lay down in the seat so nobody would see them. He lifted Miss Brown's shirt and brassiere and fondled her breasts. After several minutes, he told Miss Brown to button her blouse, and told both girls he

1. The names of the two victims used here are fictitious.

was going to let them go because they were of no help to him. He removed the tape, pulling off hair as he did so, and told them to keep their eyes closed until he let them out. He stopped at a Quick Shop, unlocked the doors and let them out. From the Quick Shop the girls called the police. The police took them to the police station. Defendant was arrested by a police officer at 5:45 p. m. on the same date in an auto agency lot in Cape Girardeau.

■ Defendant's first contention on appeal is that there is insufficient evidence to establish the identity of defendant because testimony was "contradictory or totally lacking." He further argues that the testimony of the two victims "so lacked credibility that no jury could have, on the basis of their testimony, found defendant guilty." We disagree and obviously the jury did also. The girls were abducted by the defendant in broad daylight and they positively identified him a few hours later at the police station and also in court. Discrepancies in testimony and questions of credibility are to be resolved by the jury. *State v. Brager,* 497 S.W.2d 181, 182[2] (Mo. 1973). The contention is without merit.

■ Defendant next argues that no secret confinement or intent to secretly confine was proven by the state as required by § 559.240(1). He bases this argument on the fact that the girls were driven in broad daylight through a residential neighborhood, and only their eyes were taped closed, not their mouths so that communication was possible. This contention is disposed of by *State v. Weir,* 506 S.W.2d 437 (Mo.1974). The facts in *Weir* are closely parallel to the case at bar. The *Weir* case involved an abduction of a young woman from the street into a car under the threat of a gun, with an apparent sexual purpose. In *Weir* the abduction also occurred in the middle of the day, and the victim was driven around for about thirty minutes in a heavily populated area, although she was taken eventually to an isolated field. In *Weir* the court stated, "Secret confinement, within the meaning of § 559.240, does not require proof of total concealment and complete isolation whereby the victim is rendered invisible to the entire world. It is sufficient to show that the person kidnapped has been effectively confined against his will in such a manner that he is prevented from communicating his situation to others and accused's intention to keep the victim's predicament secret is made manifest." Supra at 440[5]. The facts here are sufficient to establish secret confinement as defined in *Weir.* The girls' eyes were taped closed at gunpoint which kept them from knowing their whereabouts. The abductor electronically locked the doors of the car so the girls could not escape. In contrast to *Weir,* the windows of the car were here rolled up so the victim's screams and attempts to communicate were unavailing. Also, the victims were ordered to lay down on the seat of the car so that no one would see them. Thus, the offense of kidnapping with intent to secretly confine the girls against their will has been clearly established.

■ Defendant next contends the court erred in permitting the introduction of certain physical evidence including the tape, hair found on the tape, and items of clothing. Defendant argues that there was a break in the chain of custody as to this physical evidence. We disagree. The record here shows that there was no break in the chain of custody. Officer Stover testified that he alone had the key to the locker where the evidence was kept.

■ Furthermore, the evidence established that the physical evidence in question was the same as that which was seized from defendant's car, held in custody in Officer Stover's locker and examined by criminalist Rodger Morrison. The chain of possession requirement is designed to prevent tampering, alteration, or substitution. *State v. Rose,* 428 S.W.2d 737, 740[3] (Mo.1968); *State v. Baity,* 494 S.W.2d 425, 429[11] (Mo. App.1973). Numerous witnesses positively identified the exhibits and there was no evidence suggesting that the evidence had in any way been altered or substituted since defendant's arrest. The state's evidence need only provide reasonable assurance that the exhibit was the same at trial as when

first obtained, *State v. McCrary,* 478 S.W.2d 349, 351 (Mo.1972). We find it was not erroneous to admit these items into evidence.

■ Defendant makes two contentions here which are not preserved for our review. One contention pertained to the admission of the expert testimony of the criminalist and the other to the closing argument of the prosecutor. In neither case was there an objection made during trial and thus the contentions are not preserved for appellate review. *State v. Jones,* 515 S.W.2d 504, 506[3] (Mo.1974); *State v. McCreary,* 504 S.W.2d 132, 136[11] (Mo.App. 1973).

Defendant also challenges Instruction No. 2 given by the trial court. The instruction was given on December 5, 1973 and was the standard pre-MAI–CR instruction on reasonable doubt and burden of proof. The specific instruction contested has been upheld frequently. See, e. g., *State v. Aikens,* 507 S.W.2d 386, 389[6] (Mo.1974); *State v. Davis,* 529 S.W.2d 10, 16[11] (Mo.App.1975). In *State v. Scott,* 491 S.W.2d 514, 520[11] (Mo. banc 1973), the court noted that this particular instruction had successfully withstood similar attacks for more than 100 years.

Defendant's final contention is that the court erred in denying his motion to suppress the evidence and allowing the seized evidence to be introduced at trial because no search warrant had been obtained. He further contends that the defendant was not advised of his constitutional rights. In reaching the latter contention, we simply note that the arresting officer testified both at the pretrial hearing on the motion to suppress and at trial that he advised defendant of his constitutional rights as soon as they arrived at the police station. Probable cause for defendant's arrest was supplied by the statements and description given to the police by the two victims.

■ As to defendant's claim of an illegal and warrantless search, we hold that the physical evidence which defendant moved to suppress, i. e., masking tape, a black and white bag, and a topcoat, were all within plain view within his automobile and so were lawfully seized. *State v. Rankin,* 477 S.W.2d 72, 75[4] (Mo.1972). It is of no consequence that the items were not seized instantly when they were first viewed, at the time of the arrest. Where items are exposed to the plain view of police officers, officers may later take a second look at such items and seize them. *State v. Achter,* 512 S.W.2d 894, 905[26] (Mo.App.1974). In addition, if police officers have probable cause to search a vehicle at the scene of the arrest, then they may constitutionally search the vehicle later at the station house without first obtaining a warrant. *Texas v. White,* 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975), *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).[2]

We find no reversible error in any of the nine points relied on, and accordingly the judgment of the trial court is affirmed.

CLEMENS, P. J., and STEWART, J., concurs.

---

**2.** Also see the recent United States Supreme Court case of *South Dakota v. Opperman,* —— U.S. ——, 96 S.Ct. 3092, 3096, 49 L.Ed.2d —— (1976) which involved an inventory search of an auto. The Supreme Court stated:

"Besides the element of mobility, less rigorous warrant requirements govern [searches of automobiles] because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office."