**STATE of Missouri, Respondent,**

v.

**Joseph J. BARGEON, Appellant.**

**No. 39934.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 27, 1979.

Stephen C. Moore, Asst. Public Defender, Twenty-First Judicial Circuit, Clayton, for appellant.

John D. Ashcroft, Atty. Gen., Steven Scott Clark, Asst. Atty. Gen., Jefferson City, for respondent.

GUNN, Judge.

The defendant was convicted of rape and armed criminal action for which he received consecutive sentences of 75 years and 25 years respectively. His appeal charges trial court error: (1) in failing to suppress certain evidence seized from him and within his auto; (2) in overruling his motion for judgment of acquittal as to armed criminal action for lack of evidence. We affirm.

The 17 year old victim of defendant's attack worked in a St. Ann victualing establishment. She had closed for the evening at midnight and was in the process of cleaning up when about 1:00 a. m. she noticed an older model stationwagon with wood paneling drive through the restaurant parking lot. The same auto subsequently passed slowly on the street in front of the restaurant and then parked nearby before slowly driving off again. The victim continued in her cleanup work. As she opened the backdoor of the restaurant to take out the trash, a man who had been lurking outside came crashing in, knocking the victim down and falling on her. The victim described her assailant as a white male, having a red beard and wearing a blue and red ski mask. The attacker held a knife to the victim's face, blindfolded her and forced her to the floor. The assailant then told the victim that he had put his knife down

but that if she started to grab for it or screamed, he would kill her. The victim was then raped, and the rapist departed. She called the St. Ann police and described her assailant to them, including reference to his red beard, ski mask and a description of the old model wood paneled stationwagon. Police responded quickly, and the rapist's knife and a piece of cloth were found on the floor of the restaurant. Later, the victim noted that her wallet was missing from her purse.

A report of the rape and a description of the assailant with red beard, red ski mask and driving a wood paneled stationwagon was relayed by general police broadcast. An Overland police officer received the call over the radio shortly after the rape was reported and observed a 1967 stationwagon with wood paneling with a single occupant driving through Overland about a mile or two from the point of rape. The officer stopped the stationwagon, and the red bearded defendant exited and reached for his left rear pocket. "Due to the nature of the call," the police officer had the defendant raise his hands for a pat down search and found a red and blue ski mask in his left rear pocket. St. Ann police were summoned, and the defendant and his car were taken to St. Ann where the auto was impounded. As the defendant was being taken back to St. Ann, the ski mask fell from his pocket and was retrieved and kept by a St. Ann policeman. Looking through the window of defendant's car, the police could see on his floor what was determined to be the victim's wallet. A man's torn shirt which matched the material of the piece of cloth found at the restaurant was in plain view on the seat of the auto.

 Defendant's first complaint relates to the stopping of his auto by police allegedly without proper cause based on "a vague radio broadcast description of an automobile which has not been linked to any offense." As a consequence—so argues defendant—all evidence seized was maculated. We disagree. A police officer may in appropriate circumstances stop a person to investigate possible criminal behavior al-

though no probable cause to make an arrest exists. A brief stop of a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information may be most reasonable in light of the facts known to the officer at the time. Therefore, if a police officer entertains a reasonable suspicion that criminal activity may be afoot he may stop the suspicious person, identify himself, require the suspect to identify himself and make reasonable inquires concerning his activities. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Johnson*, 566 S.W.2d 510 (Mo.App.1978); *State v. Taylor*, 538 S.W.2d 761 (Mo.App. 1976); *Kansas City v. Fulton*, 533 S.W.2d 677 (Mo.App.1976). We specifically find that the Overland police officer who halted defendant's vehicle after receiving a report of a rape in nearby St. Ann and the connection of an older model stationwagon with wood side paneling could have reasonably suspected under the circumstances that the occupant of the stationwagon with wood side paneling carrying the defendant may have been involved in criminal activity and could therefore be momentarily detained for investigation. *State v. Johnson*, 558 S.W.2d 424 (Mo.App.1977), is felicitous to the issue here. In *Johnson*, id., it was held that the stopping, arrest and search of defendants and their Dodge Polara auto was proper after a police officer received a radio broadcast that a Dodge Polara had been involved in a robbery. The stopping and search had been made solely on the basis of the radio description of the auto. Also, closely on point is *State v. Carter*, 572 S.W.2d 430 (Mo. banc 1978), where the witnesses' description of a tan or light colored car served as the basis for probable cause for arresting and searching the defendant found in a cream colored car. In *State v. Murray*, 445 S.W.2d 296 (Mo.1969), the only description given for a robbery getaway vehicle was "a black convertible with white top." This information was held to give a police officer probable cause to stop a 1955 black and white Buick convertible and search and arrest its occupants. Thus, the radio broadcast describing the defendant's

vehicle, gave the Overland police officer reasonable ground to stop him for purposes of investigation. *State v. Granberry*, 530 S.W.2d 714 (Mo.App.1975). See also *State v. Johnson*, 566 S.W.2d 510 (Mo.App.1978).

■ Once having legitimately stopped the auto, under the facts here the Overland police officer properly frisked the defendant. The police officer knew that a violent crime had been committed; that the defendant matched the description of the rapist. Further, defendant made a move to his hip pocket on exiting from the auto. Thus, a limited "pat down" intrusion was invited and warranted, including the removal of the ski mask. *Terry v. Ohio*, supra; *State v. Singleton*, 560 S.W.2d 379 (Mo.App.1977); *State v. Taylor*, supra.

■ After taking the defendant to the St. Ann police station for booking, defendant's auto was impounded and items such as the victim's wallet and defendant's shirt were taken from it and used in evidence. These items were plainly visible to the police officers viewing the interior of the auto inside or were available through proper inventory procedures. *State v. Jines*, 539 S.W.2d 801 (Mo.App.1976); *State v. Taylor*, supra. The fact that the items were not seized instantly is of no moment. *State v. Jines*, supra. We find that all articles which defendant complains were obtained as a result of unlawful search and seizure were properly received in evidence either as incident to lawful investigatory detention, *Terry v. Ohio*, supra, *State v. Johnson*, 558 S.W.2d 424 (Mo.App.1977), were in plain view, *State v. Epperson*, 571 S.W.2d 260 (Mo. banc 1978), or, in the case of such exhibits as photographs of the defendant's footprints at the crime scene and the vic-

tim's shoes, the defendant lacked possessory interest to challenge their admission on the basis of unlawful search and seizure. *State v. Hatten*, 561 S.W.2d 706 (Mo.App.1978); *State v. Dodson*, 556 S.W.2d 938 (Mo.App. 1977); *State v. Vineyard*, 497 S.W.2d 821 (Mo.App.1973).

■ Defendant's final point is that the state's evidence did not support his conviction for armed criminal action. We believe defendant's argument on this point to be chimercal. Section 559.225, RSMo Supp. 1976, relating to the crime of armed criminal action, provides:

" . . . any person who commits any felony under the laws of this state by, with, or through the use, assistance or aid of a dangerous weapon is also guilty of the crime of armed criminal action . . . ."

The evidence clearly established that the defendant used a knife to accomplish his rape of the victim. Indeed, the knife was found at the crime scene and in the manner used here was a dangerous and deadly weapon. *State v. Baldwin*, 571 S.W.2d 236 (Mo. banc 1978). Hence, the evidence supports the conviction for armed criminal action.

Judgment affirmed.

REINHARD, P. J., and CRIST, J., concur.