**STATE of Missouri, Respondent,**

v.

**Van Lamont CLARK, III, Appellant.**

**No. 42104.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 14, 1980.

Glenn Hunt, Asst. Public Defender, Twenty–First Judicial Circuit, Clayton, for appellant.

John Ashcroft, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

GUNN, Judge.

Defendant appeals from his jury conviction for first degree robbery alleging two points of trial court error: (1) certain admitted evidence was the product of an unlawful search and seizure; (2) the instructions deviated from MAI–CR 2d and did not properly instruct on the culpable mental state required for conviction. We affirm.

In the early morning hours of January 12, 1979, a Ferguson 7–11 Store was robbed of approximately $300 in cash, and a number of blank money orders were taken. While one robber, positively identified as the defendant, asked for a pack of cigarettes, his companion pointed a pistol at the store's lone employee. Defendant then removed money from the cash register and the safe which was ordered opened. Blank money orders and a blue bank money bag were also taken from the safe. When a customer's auto stopped in front of the store, the robbers made a hasty exit and were observed driving off in an auto which had been parked nearby.

Police were immediately summoned and the description of one of the robbers and the getaway vehicle was broadcast over the police radio. The suspect was described as a black male, about twenty–one years old, five feet eleven, wearing a dark jacket and a knit cap. The vehicle was described as a green 1970 or 1971 Ford Mustang.

Shortly after the radio transmission, a Ferguson police officer, about six or seven blocks from the crime scene, stopped a green 1969 Chevrolet Camaro occupied by two young black males in the front seats. As the officer approached the vehicle, he noticed the stirring of another black male wearing a knit cap who had been lying down in the back seat. The officer ordered the three occupants to raise their hands to the ceiling of the car and had them remain in that position until an assisting officer arrived some thirty seconds later. The assisting officer opened the passenger door of the vehicle and ordered all three men to get out. A loaded .22 caliber revolver was readily observable on the floor of the car between the passenger seat and the door. Further investigation revealed a blue bank bag, loose currency, rolled coins and some 7–11 Store blank money orders on the rear floor of the vehicle. Two packs of cigarettes were also found, one being the same brand bought by defendant at the 7–11 Store minutes earlier. The three suspects were placed under arrest and taken back to the 7–11 Store where defendant and another suspect were identified as the robbers by the 7–11 employee and a customer who had arrived just as the robbers were leaving the store.

We first consider defendant's contention that the evidence seized from the automobile should have been suppressed. Defendant argues that as the vehicle was not in violation of any of the traffic laws at the time it was halted, because the vehicle did not fit the description broadcasted over the police radio and because only a general description of the suspects was given, there were no reasonable grounds for stopping the Camaro nor was there probable cause to arrest defendant. Hence, defendant claims, the warrantless search of the car was illegal and the evidence seized was maculated and inadmissible at trial.

■ In appropriate circumstances a police officer may stop a vehicle to investigate possible criminal behavior although no probable cause to make an arrest exists. If a police officer, in light of facts known at the time, entertains a reasonable suspicion that criminal activity may be afoot, he may stop the suspicious person and make reasonable inquiries concerning the suspect's activities. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Bargeon*, 578 S.W.2d 364 (Mo.App.1979). Defendant stresses the fact that his vehicle, a 1969 Chevrolet Camaro, was not the year, make or model of the auto described in the police broadcast. He thus argues that the police officer could not have a reasonable suspicion to stop his vehicle. The Camaro, however, was the described color, of close vintage, and the officer testified that it was the same basic size and shape as the described getaway car. In similar situations, reasonable ground for an investigatory stop has been found even though the description was somewhat general or imprecisely fit the suspect vehicle. *E. g., State v. Carter*, 572 S.W.2d 430 (Mo. banc 1978); *State v. Murray*, 445 S.W.2d 296 (Mo.1969); *State v. Morgan*, 593 S.W.2d 256 (Mo.App.1980); *State v. Bargeon*, 578 S.W.2d 364 (Mo.App. 1979). Given the proximity of time and distance from the 7–11 robbery, the match-

ing color of the vehicle, the similarity in size and shape of the vehicle, and two young black males visible in the vehicle, we specifically find that the police officer had an adequate basis for reasonable suspicion to make a legitimate investigatory *stop of defendant's auto.*

■ After stopping the vehicle and noticing the defendant in the back seat wearing a knit cap and generally fitting the broadcast description of one of the robbers, the police properly ordered the suspects out of the car to frisk them. *State v. Bargeon,* 578 S.W.2d at 367. Possessing knowledge that a pistol had been used in the robbery, the police officer had probable cause to make an arrest when he observed the gun in the vehicle, if indeed it had not existed *before then. From that point, any evidence* seized from the vehicle, if not in the officer's plain view, was the result of a valid search incident to a lawful arrest, as under the circumstances there was probable cause to believe that stolen property might be found in the car. *State v. Johnson,* 558 S.W.2d 424, 426 (Mo.App.1977). All items of evidence complained of were properly received into evidence at trial.

■ Defendant's second point relates to the jury instructions given. The case was tried in May 1979, and the court was *therefore required to use the pattern instructions* contained in MAI–CR 2d. The elements of first degree robbery are set out in MAI–CR 2d 23.02, although the parenthetical language in paragraph third indicates this instruction may be adapted for use where the defendant acted with others, a deviation must be made in paragraph second if the particular defendant was not the individual who threatened or used physical force as was the situation in this case. Additionally, the Notes on Use to MAI–CR 2d 2.10 provide, *inter alia,* that the relevant parts of MAI–CR 2d 2.10 and 2.12 "must be given, whether requested or not, when there is any evidence that the defendant acted with others, either as an active participant or one who aided, agreed to aid or attempted to aid another in planning, committing or attempting to commit an offense." MAI–CR

2.10, Notes on Use at note 3. Only the first and second paragraphs of MAI–CR 2d 2.12 are required to be given in the present factual situation (see MAI–CR 2d 2.12, Notes on Use at note 6), and neither paragraph calls for the individual elements of the offense to be set forth—the first paragraph directs that the offense merely be briefly identified. The Notes on Use, however, specify that: "If MAI–CR 2d 2.12 is used, the court must give a separate instruction defining the offense . . . ." MAI–CR 2d 2.12, Notes on Use at note 5.

During the instruction conference at trial, the state pointed out to the court that MAI–CR 2d 2.12 (labelled "Parties: State's Verdict Directing Instruction–Active Participants or Aiders") appeared to conflict with MAI–CR 2d 2.04, which prescribes that all verdict directing instructions must contain an enumeration of all essential elements of the offense. MAI–CR 2d 2.04, Notes on Use at notes 1 and 2. The court recognized this apparent antinomy and gave the state's offered verdict directing instruction which included the elements of the offense from MAI–CR 2d 23.02 within the framework of MAI–CR 2d 2.12 as follows:

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about January 12, 1979 certain persons committed the offense of robbery in the first degree on Terry Hale, and

In that certain persons in doing so threatened the immediate use of physical force on or against Terry Hale for the purpose of preventing resistance to the taking of the property, and

In that in the course of stealing the property a participant with the defendant in the crime displayed or threatened the use of what appeared to be a deadly weapon or dangerous instrument, and

Second, that the defendant, either before or during the commission of the offense of robbery in the first degree with the purpose of promoting its commission, aided such other person in committing that offense, then you will find the de-

fendant guilty of robbery in the first degree.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

If you do find the defendant guilty of robbery in the first degree, you will assess and declare the punishment at:

1. Life imprisonment, or

2. Imprisonment for a term of years fixed by you but not less than ten years and not to exceed thirty years.

Defendant complains that this instruction was error because (1) it does not require a finding of the culpable mental state necessary for first degree robbery in that it does not require that defendant's "purpose was to forcibly appropriate the property of another," and (2) it deviates from MAI. We find no merit in this argument. First, § 569.020, RSMo.1978, defining first degree robbery does not specify the necessary culpable mental state. Thus, according to § 562.021(2), RSMo.1978, the requisite mental state is established if the defendant acted "purposely or knowingly or recklessly . . . ." The second paragraph of the verdict directing instruction (see above) required the jury to find defendant guilty of robbery only if he acted "with the purpose of promoting its commission," *i. e.*, that he acted *purposely*. This instruction on the necessary culpable mental state fully complied with MAI and the statutory scheme, and nothing more was required.[1] Second, the only deviation from MAI was the inclusion of the elements of the offense in the verdict directing instruction instead of in a separate definitional instruction, plus some minor rewording of the second paragraph of MAI–CR 2d 23.02 to comport with defendant's role in the robbery.

Rule 28.02(e) provides that the giving of an instruction which varies from the MAI forms "shall constitute error, its prejudicial effect to be judicially determined." There was no prejudice to defendant here. The jury was fully and clearly instructed on the law applicable to the case. The record reflects that the trial court made a legitimate and conscientious effort to cure an apparent defect in the form instructions, and defendant has not shown any resulting prejudice.

Judgment affirmed.

DOWD, P. J., and REINHARD and CRIST, JJ., concur.

---

1. See § 562.016.2, RSMo.1978 which designates "acts purposely" as a term of precise meaning.