STATE of Missouri,
Plaintiff-Respondent,

v.

Tommy Everett JONES,
Defendant-Appellant.

No. 11804.

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 30, 1980.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Briney Welborn, Briney, Welborn & Spain, P. C., Bloomfield, for defendant-appellant.

TITUS, Judge.

Defendant was charged with the class C felony of stealing a "motor vehicle", to wit, "one 1979 Pontiac." § 570.030–2(3)(a), RSMo 1978. A Stoddard County jury found defendant guilty and assessed a two-year prison term. § 558.011–1(3), –2, RSMo 1978. Thereafter, having determined defendant was a persistent offender, the court assessed an additional sentence of five years, making a total sentence of seven years. § 558.016–1, –2, –4(2), RSMo 1978. Defendant appealed and his principal point relied on here is that "the state failed to make a submissible case against the defendant and failed to prove beyond a reasonable doubt that the defendant appropriated a 1979 Pontiac as set forth in the information."

When deciding whether the evidence is sufficient vel non to support the jury's conviction, it and all reasonable inferences arising therefrom must be considered in the light most favorable to the state and all contrary evidence and inferences must be disregarded. *State v. McGee*, 592 S.W.2d 886, 887[1] (Mo.App.1980). We bear this in mind while recasting herein the evidence adduced at trial.

On Tuesday, January 15, 1980, the father of the owner of the Pontiac took the vehicle to a Sikeston automobile agency to be sold. With the keys in the ignition, the car was placed on the agency's sales lot. The agency was closed Sunday, January 20, but on Monday, January 21, the car was discovered to be missing. No witness for the state saw the vehicle removed for the sales lot; neither had they ever seen defendant in or near the Pontiac.

At 10 or 10:30 a. m. January 21, a farmer discovered the Pontiac in his field some six miles northeast of Bloomfield in Stoddard County. The car had been stripped of its radiator, four tires and wheels, a space saver tire and wheel, steering column, carburetor, alternator, distributor, battery, air conditioner compressor and radiator. A deputy sheriff summoned to the farm found a green coat button on the passenger side of the Pontiac's front floorboard.

Near noon on January 21 the Sheriff of Stoddard County and a deputy were en route to and about a quarter of a mile from where the stripped car was located when they met and passed a black Ford pickup truck traveling in the opposite direction. Whether or not anything was in the truck except the two white male occupants was not shown. The sheriff did not know the identify of either truck occupant. The deputy got the truck's license number and from this it was determined the truck belonged to Charles Arthur of Dexter in Stoddard County. Dexter is located some 13 miles from the farm where the Pontiac was found.

The owner of the pickup truck recounted that defendant, who was alone at the time, borrowed his truck between 9:30 and 10 a. m. January 21 for the avowed purpose of transporting trash. Also on January 21, defendant's wife and one Freda Morrow of Dexter drove to Sikeston in defendant's automobile. Sikeston is about 25 miles east of Dexter.[1] The two ladies arrived at a bar in Sikeston around noon where they met and remained with defendant and a Mike Thomas until 1:30 or 2 p. m. Ms. Morrow thereafter returned the pickup truck to its owner.

The operator of an automobile body shop near Dexter bought used car parts employed in rebuilding wrecked vehicles. On the morning of January 21 (time unknown)

---

1. We judicially notice the geographical location of cities and towns in the state and the distances between them. *Griffin v. Doss*, 411 S.W.2d 649, 651 (Mo.App.1967).

defendant and another "boy", whom the operator did not know and had not seen before nor since, arrived at the shop in a black Ford pickup truck. Who was driving the truck upon its arrival or departure at the shop was unknown to the operator. In any event, the operator purchased some tires and General Motors parts. He was of the opinion that he was buying the items "through" defendant, not "from" him, because each time a proposed purchase price was named by the operator for a certain item, the defendant conferred with the "other guy" before agreeing to a sale. With the exception of the air conditioner compressor and the radiator, the operator bought all the other car parts and tires previously mentioned. Whatever happened to the compressor and radiator supposedly stripped from the Pontiac was never explained. The shop operator could not identify the items purchased from the "other guy" as having been taken from the stolen car as all, except for the steering column, could have come from any General Motors automobile. The steering column could have come from Firebird Pontiacs manufactured over a period of several years.

On Sunday evening, January 27, so related the Sheriff of Scott County, defendant was accosted wearing an orange and green hooded car type coat with the fourth green colored button missing. The sheriff said that type and color of coat was not uncommon. He had never seen defendant wearing such a coat previously and neglected to ascertain if the coat belonged to the defendant.

Mike Thomas, previously mentioned, was defendant's sole witness. He testified that he stole the Pontiac from the sales lot on Saturday January 19 and that when he pleaded guilty to the offense in March 1980, he told the court he alone had stolen the vehicle.

■ Recent possession of a stolen automobile is a circumstance from which guilt of stealing may be inferred. *State v. Buffington*, 588 S.W.2d 512, 514[5] (Mo.App. 1979). Nevertheless, if joint, as opposed to exclusive, possession is shown, there must be some evidence of defendant's guilt other than the inference of guilt raised by the possession in order for the conviction to be sustained. *State v. Lewis*, 576 S.W.2d 564, 566[2] (Mo.App.1978); *State v. Pruett*, 522 S.W.2d 823, 824[2] (Mo.App.1975).

■ Albeit the capacity of the writer of this opinion for fantasizing easily dwarfs that of the average acidhead, it cannot be ignored that the anomalies and debilitations permeating the state's evidence leaves much to be desired in establishing, beyond a reasonable doubt, defendant's guilt of stealing the 1979 Pontiac in question. There was a total dearth of proof that defendant stole or was possessed, singly or jointly, of the automobile he was accused of stealing. But even if possession of portions of the stolen vehicle could serve as proof of possession of the whole [cf. *State v. Lackland*, 136 Mo. 26, 32, 37 S.W. 812, 814[2] (1896)], at no time was defendant's possession of the parts shown to be exclusive. At best, the state's lone witness who associated defendant with the parts, described him as an intermediary salesman acting at the behest of the unidentified cooccupant of the pickup.

Moreover, the testimony of the Sheriff of Stoddard County that he espied the pickup borrowed by defendant near noon on January 21 some quarter of a mile from the site where the stolen stripped car was found is no evidence that defendant stole the vehicle. The sheriff did not see defendant in the pickup, but even if he had done so, occupancy of a Ford pickup is no proof of possession of a Pontiac automobile. In addition, at about the same time the sheriff was observing the borrowed pickup five and a half miles northeast of Bloomfield in Stoddard County, state's witness Morrow was visiting with defendant in a bar located in Sikeston in Scott County. Furthermore, the state's evidence did not undertake to show that the pickup was in Sikeston when witness Morrow was in the bar with defendant; likewise, it was not shown whether or not the pickup was brought to the bar at a later time by someone other than defendant or his male companion. The button

found in the floorboard of the stripped automobile was not directly connected with defendant or any clothing belonging to him. But even if it be unauthorizedly assumed that the button, which is of a very common variety, got into the car from clothing worn by the defendant, it would entail additional guesswork to conclude the button detachment occurred during or at the time of the theft.

When the evidence of defendant's stealing is wholly circumstantial, the facts and circumstances relied on by the state to prove guilt must not only be consistent with each other and with the hypothesis of defendant's guilt, but must additionally be inconsistent and irreconcilable with his innocence and must point so satisfactorily and clearly to his guilt as to exclude every reasonable hypothesis of innocence. *State v. Pruett*, supra, 522 S.W.2d at 824. Giving the state the benefit of the most favorable view of the evidence and inferences in support of the conviction, the most that can be said in this case is that defendant was found to have been in joint possession of parts of an automobile previously stolen. In the absence of additional facts and circumstances to connect defendant with the theft of the Pontiac, there is not enough to support a legal inference that defendant participated in the crime charged. Cf. *Mills v. State*, 3 Md.App. 693, 241 A.2d 166 (1968).

When the conviction, as here, is reversed for lack of sufficient evidence to sustain the jury's verdict, the judgment of the court nisi must be reversed and the defendant discharged. *State v. Basham*, 568 S.W.2d 518, 521[3] (Mo. banc 1978). It is so ordered.

GREENE, P. J., and FLANIGAN, J., concur.