STATE of Missouri, Respondent,

v.

Tommy D. SHEETS, Appellant.

No. WD 32165.

Missouri Court of Appeals,
Western District.

Aug. 3, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Oct. 5, 1982.

John Benson Williams, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Carl S. Yendes, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P.J., and PRITCHARD and DIXON, JJ.

PRITCHARD, Judge.

Appellant was by the verdict of a jury found guilty of committing the Class "C" felony of stealing without consent property of the value of $150.00. § 570.030(2), RSMo 1978. In accordance with the jury's assessment of punishment, the court sentenced appellant to imprisonment in the county jail for one year.

The first contention is that there was not "sufficient, admissible, competent, and relevant evidence from which the jury could have found that the appellant, in concert with others, 'appropriated property including medical supplies of a value of at least $150.00, which said property was owned by Dr. C.L. Judd' ", as alleged. It is further said that the evidence showed merely that appellant had an opportunity to commit the offense, and the state failed to prove that he had exclusive possession of the allegedly stolen items.

 The facts are these, and are basically the same as those set forth in the companion case of State v. Dodson, 641 S.W.2d 115 (Mo.App.1982): Nurse Dixie Cooley was on duty at the Putnam County Hospital on February 3, 1980. She observed appellant standing in front of the nurses' desk between 4:00 and 4:30 p.m., in the company of a young lady with light colored, blond hair. The young lady asked where the hospital pharmacy was to purchase contact lens fluid, and Nurse Cooley told them it was closed to the public and directed them to Casey's General Store about 5 blocks from the hospital. The two then left in the direction of the hospital lobby. Then another man (identified by photograph as Neighbors by Nurse Cooley), shorter than appellant, was seen by Nurse Cooley walking past the nurses' desk from which he went down the hall and into the Director of Nurses room, from which he peeked around the door at Nurse Cooley. He then returned and met the young lady in front of the nurses' desk, and the two went back toward the lobby where Nurse Cooley again saw the three. Later, Nurse Cooley saw the three in the cafeteria eating, and they left it about 5:45 p.m., before she was called on an emergency. Nurse Cooley identified photographs of the young lady and the other man who she saw with appellant. LPN Alberta Wood saw the three leave the cafeteria and turn left as if to leave by the rear hospital exit.

Dr. C.L. Judd, D.O., arrived at the hospital from his home at 5:00 to 5:30 p.m., on February 3, 1980, parking at the back door. There was, among other cars, a '71 or '72 brown-colored four-door Buick parked there some 30 feet away. He went to the cafeteria where he saw three persons he did not know, but he identified them as Nurse Cooley had done. Dr. Judd left the hospital between 6:30 and 7:00 p.m., and noticed that his medical bag was not in his car. The bag contained a stethoscope, blood pressure machine, lights, various injectibles (vistaril, penicillin, lincocin, decadron, demoral), and a sack of syringes. No one inside the hospital knew anything about the bag. Dr. Judd later noticed a wind noise around the car door, and discovered the rubber around the window was crinkled and the chrome was scratched. He reported to the sheriff that his bag had been taken and his car jimmied. He identified a plastic bag and its contents (syringes) in court. Prior to the time Dr. Judd came to the hospital on February 3, his car had been locked in his garage while he was on a trip for a week.

Sue Hayes, an employee of Casey's General Store in Unionville, testified that no one asked for contact lens fluid on February 3, the store having those items in stock.

Robert Stottlemyre, co-owner of Donna's Jewelry Box, a bridal boutique, in Unionville, observed appellant and his two companions therein on February 5, 1980. The three first looked at jewelry in a showcase, then appellant and the lady went to the front and started embracing, while the other man remained at the jewelry case. He saw the three leave and enter a dark colored brown four-door Buick. Stottlemyre took the license number to the sheriff's office and pointed out the car to the sheriff through a window in his office. [Objection was made as to the relevancy of this testimony, the last point herein being on that subject.]

Sheriff Glenn Vestal investigated the theft, the persons who were at the hospital having been described to him. After Stottlemyre gave him the license number and pointed out the two persons sitting in the Buick, he ran a license check and learned it was registered to a Jesse Whitaker. Officer Simmons brought the two persons to the sheriff's office, one girl and appellant, and the third person (Neighbors) was then brought in from a drugstore. The sheriff then gave the three their Miranda warnings. The girl, Ms. Dodson, advised him that she had borrowed the car from a friend, and she signed a form consenting to its search in the presence of appellant and Neighbors. He turned the car, with keys, over to Deputy Caldwell, who with Officer Simmons, searched its interior. The keys, however, would not fit the trunk, and Ms. Dodson did not have one. Caldwell then took the car to a Chevrolet dealer who went through the back seat and tripped the lock on the inside of the trunk, removing therefrom a bag of syringes and needles which was introduced into evidence, having been identified by Dr. Judd to be what he carried in his bag. The doctor also testified that he placed discarded needles and cotton in the bag and the exhibit had discarded needles and cotton in the container. Appellant declined to testify in the case.

In *State v. Cobb,* 444 S.W.2d 408, 414 (Mo. banc 1969), defendant's conviction was affirmed for burglary and stealing where it was shown that he had been at the scene of the crime, had an opportunity to commit it, in addition to being a passenger in the car transporting the stolen property. The court said, "Stolen property found in an automobile in which the defendant is a passenger near the scene of a burglary is admissible against the defendant at his trial for burglary without showing that the defendant had any interest in or right to possession of the automobile. (Citing cases.)" In *State v. Arnold,* 566 S.W.2d 185 (Mo. banc 1978), there was a combination of defendant's presence at the scene, an opportunity to commit the crime, flight, and possession of recently stolen merchandise, all in one continuous chain of events, held to be suffi-

cient to support the conviction. The case of *State v. McClinton,* 566 S.W.2d 506 (Mo. App.1978), held that evidence showing defendant was driving a car, with several other passengers, and containing stolen property, together with evidence placing him at the scene of the crime when it took place, with opportunity to commit it was sufficient to make a submissible case. See also *State v. Schleicher,* 458 S.W.2d 351, 353 (Mo. banc 1970), where it was held that evidence of defendant's aid in the disposition of stolen property and his proximity to the scene of the crime, distinguished it from an earlier case, *State v. Schleicher,* 438 S.W.2d 258 (Mo.1969) [relied on by appellant here], where among other lacking factors, there was no evidence placing defendant at the scene of the crime. The circumstantial evidence here establishes appellant's participation, viewed in its light most favorable to the state. The facts are consistent with each other and the hypothesis of appellant's guilt, and the mere existence of other possible hypotheses of innocence does not remove the case from the jury. The evidence adduced placed appellant and his companions in the hospital prior to and during the time that Dr. Judd's automobile was entered and his property was stolen. The car in which appellant was riding was near that of Dr. Judd. Appellant was seen leaving toward the back door of the hospital leading to the parking area. This establishes the important factor of being at the scene of the crime at or near the time of its commission. Appellant had the opportunity to commit the crime, along with his companions. The same car and the same companions were found together when the search was made. Joint possession of the stolen property under these facts is supported by *State v. Cobb,* supra. The evidence was sufficient to show a concerted action of these accomplices, and their joint possession of the loot. The first point is overruled.

■ Appellant next contends that the trial court erred in giving Instruction No. 5, which submitted that the stealing was committed by certain persons with his aid or

attempted aid. The first amended information charged that stealing was committed in concert with others. Appellant says that MAI–CR 24.02.1 should have been used because he was charged with a single count of stealing property of a value of at least $150.00. Instruction No. 5 follows MAI–CR 2.12, which is a state verdict directing instruction where there are "Active Participants or Aiders." MAI–CR 2.10 provides that an instruction on MAI–CR 2.10 and 2.12 *must* be given, whether requested or not, when there is any evidence that the defendant acted with others, either as an active participant or one who aided, agreed to aid or attempted to aid another in planning, committing or attempting to commit an offense. The trial court followed this mandate under the evidence above set forth, and there was no error in giving Instruction No. 5. [It should be noted that Instruction No. 7, not here challenged, was given in accordance with MAI–CR 2.10.]

■ Stottlemyre did not, in words, characterize the three persons he saw in his store on February 5, 1980, as acting in a strange or suspicious manner. He says that the testimony, which merely described the actions of the three, was elicited for the sole purpose of circumstantially creating the inference that he and others were acting in a suspicious manner, which permitted the jury to infer that he and the others were engaged in other crimes, and the testimony was completely irrelevant. The testimony was corroborative of other testimony which placed the three persons, acting in concert, together on February 3, 1980, in that it showed that they were still together on February 5, 1980. It was also admissible as evidence surrounding the arrest. *State v. Russell*, 602 S.W.2d 465, 466[1] (Mo.App. 1980). The matter of relevancy is one for the trial court to determine in the exercise of its discretion, *State v. Lenza*, 582 S.W.2d 703, 709[10] (Mo.App.1979), and it does not here appear that there was any abuse of that discretion. *State v. Wood*, 596 S.W.2d 394, 402[19, 20] (Mo. banc 1980). The last point is overruled.

The judgment is affirmed.

All concur.