STATE of Missouri, Respondent,

v.

Vanessa L. DODSON, Appellant.

No. WD 32515.

Missouri Court of Appeals,
Western District.

Aug. 3, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Oct. 5, 1982.

John Benson Williams, Kansas City, for appellant.

John Ashcroft, Atty. Gen., and Kristie Green, Asst. Atty. Gen., Jefferson City, for respondent.

Before CLARK, P.J., and MANFORD and KENNEDY, JJ.

KENNEDY, Judge.

Appellant Vanessa Dodson appeals from a jury verdict convicting her of two counts of stealing without the owner's consent property valued at $150 or more, § 570.-030(2), RSMo 1978, subsequently amended (Cum.Supp.1981). She was sentenced to a term of one month in the county jail on each count, the sentences to run consecutively. On appeal, Dodson challenges the sufficiency of the evidence to support the jury's verdict. She also complains of the verdict-directing instructions and that the trial court erroneously failed to grant the appellant's request for a mistrial because of prejudicial jury argument by the prosecuting attorney.

Appellant and three other individuals, Tommy Sheets, James Neighbors and Ginny Judd, in a brown Buick registered to one Jessie Whittaker, traveled from Kansas City to Unionville on February 3, 1980. About 5:00 p.m. Dodson and two of her companions, Sheets and Neighbors, went into the Putnam County Memorial Hospital at Unionville. At trial Dodson testified that Ginny Judd remained asleep in the car. Dodson asked a nurse on duty for directions to the hospital's pharmacy because she wanted to purchase some contact lens solution. The nurse informed her that the hospital pharmacy was only for patients. She directed Dodson to a local store that might carry the solution. Dodson and Tommy Sheets left the nurse's station and went to another part of the hospital.

The nurse saw James Neighbors in a wing of the hospital that did not have any patients. He wandered around awhile, looking into all of the rooms. Eventually, Neighbors joined the other two and walked away. The nurse did not see where they went.

The three were next seen eating in the hospital cafeteria about 5:15 p.m. The cafeteria is located across the hall from the Doctors' Lounge. About this time Dr. Judd arrived at the hospital and parked his car near a brown Buick, which he did not recognize. Soon after Dr. Judd entered the hospital, Dodson, Sheets and Neighbors were seen heading for the rear entrance of the hospital. This entrance led to the lot where both the Buick and Dr. Judd's car were parked.

Approximately one hour after his arrival, Dr. Judd left the hospital. Dr. Judd discovered that his emergency medical bag was missing from his car. He also discovered that the car door and window trim had been damaged. The incident, along with a description of the brown Buick, was reported to the sheriff.

Brian Mahan, a student doctor at the hospital, had also parked his car in the back lot that same evening. Mahan was in the hospital from approximately 5:00 until 7:00 p.m. When he entered his car to leave the hospital, Mahan discovered that various items were missing from his car. The next

day, Mahan discovered that a medical bag Dr. Judd had prepared for him was missing from the Doctors' Lounge inside the hospital.

Two days later, Dodson, Sheets and Neighbors were seen in a local jewelry store. The proprietor's husband thought that they were acting suspicious, so he called the sheriff. Dodson and Sheets were in the front of the store "kissing and hugging", while Neighbors was in the rear of the store eyeing the watches.

Since the car the three were driving, a 1972 brown Buick, matched the description of the car seen at the hospital, the sheriff had the three arrested. According to the sheriff's testimony, Dodson, at the time of the arrest, stated that she had borrowed the Buick from a friend. In her own testimony at trial, Dodson stated that she did not know Jessie Whittaker, the registered owner of the car. According to her, Neighbors was driving the Buick when he picked up Dodson on February 3rd before starting on the trip to Unionville. She had possession of the ignition key only because she had pulled the keys out of the ignition when the deputy sheriff took her into custody. The car was parked when this occurred. Dodson was sitting in the middle of the Buick's front seat, Sheets was seated to her right. Nobody was sitting in the driver's seat. At the time, Neighbors was still in the jewelry store. Dodson gave the sheriff the keys to the car and signed a form giving her consent to search the automobile. Since none of the three admitted to having a key to the trunk, the car was taken to a Chevrolet dealer's shop, where the trunk was opened. The search revealed a bag of syringes, a pair of tennis shoes, a leather vest, and a pair of jogging pants.

Dr. Judd identified the bag of syringes as coming from his emergency medical bag. Mahan identified the other items as those taken from his car. Dr. Judd estimated the value of the bag and its contents at approximately $350. Mahan approximated the total value of the goods taken from his car at $170.

At trial, Dodson testified that she never looked in the trunk of the car and that she had no idea what was in it. She had no idea how the items got into the trunk. She also testified that she did not take the doctor's bag out of Dr. Judd's car, nor did she see anyone take any items out of the hospital.

*Sufficiency of evidence.*

For her first point, appellant argues that the trial court erred in failing to sustain her motion for judgment of acquittal because the "evidence presented by the state was not substantial in that it showed that appellant merely had an opportunity to commit the offense alleged and the state failed to prove that the appellant had exclusive possession of the allegedly stolen items."

The state's case was based on circumstantial evidence. For purposes of review, all facts in evidence and favorable inferences that can be drawn therefrom must be analyzed in the light most favorable to the state. Any facts and inferences to the contrary will be disregarded. *State v. Franco,* 544 S.W.2d 533, 534 (Mo. banc 1976), cert. denied 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977); *State v. Moon,* 602 S.W.2d 828, 831 (Mo.App.1980). As appellant notes, when the evidence of the stealing is circumstantial, the facts and inferences that the state relies on must be consistent with each other and with the hypothesis of defendant's guilt. Further, the facts and inferences must be inconsistent with the hypothesis of innocence. *State v. Jones,* 610 S.W.2d 396, 399 (Mo.App.1980); *State v. McKinney,* 630 S.W.2d 96 (Mo.App.1981). The court in *State v. Arnold,* 566 S.W.2d 185, 188 (Mo. banc 1978), citing from *State v. Franco,* supra, noted that the above rule "is realistically tempered in its application since '[i]n a case involving circumstantial evidence the circumstances need not be absolutely conclusive of guilt, and they need not demonstrate impossibility of innocence; . . . the mere existence of other possible hypothesis is not enough to remove the case from the jury.'"

"An inference of guilt is permissible from the unexplained possession of proper-

ty recently stolen in a burglary and the inference exists both as to the offense of burglary and of stealing." *State v. Cobb,* 444 S.W.2d 408, 414 (Mo. banc 1969); *State v. Arnold,* supra at 188. Possession need not rest solely with the defendant, but may be joint with others. Such joint possession does not need to be separated from the possession of others. *State v. Cobb,* supra at 412; *State v. Savu,* 560 S.W.2d 244, 245 (Mo.App.1977). Even if defendant had no interest in or right to possession of the Buick, stolen property found in the automobile in which she was riding was admissible against her, even though she was only one of several people in the car. The stolen items may be found in a locked trunk and still be admitted into evidence. *State v. Arnold,* supra. In cases where the state relies on joint possession, some evidence, in addition to the possession, must be introduced to connect the defendant with the crime. *State v. Cobb,* supra; *State v. Schleicher,* 458 S.W.2d 351, 353 (Mo. banc 1970); *State v. Farmer,* 490 S.W.2d 72, 74 (Mo.1973).

■ Appellant relies on *State v. Schleicher,* 438 S.W.2d 258, 261 (Mo.1969), for the proposition that the evidence of possession was not sufficient to warrant an inference of her guilt. In *Schleicher,* the defendant was seen jumping from the bed of a truck. Later it was discovered that the truck contained stolen merchandise. Unlike the facts in this case, Schleicher was not seen near the scene of the crime, nor was it shown that Schleicher had any opportunity to commit the theft. Further, there was no evidence that Schleicher had any past rela-tionship with the other men arrested near the truck. In this case, Dodson admitted going to Unionville with three companions. The evidence here shows that Dodson was at the hospital between 5:00 and 5:30. The items were taken from Dr. Judd's car sometime between 5:00 and 6:00. Mahan's items were taken between 5:00 and 7:00. The car in which Dodson was riding was parked close to both cars at the hospital, and Dodson was seen leaving the hospital through the exit nearest Dr. Judd's and Mahan's cars. Further, Dodson was in the company of the same people at the hospital and when the police arrested her.[1]

The facts of this case are similar to those in *State v. McClinton,* 566 S.W.2d 506 (Mo. App.1978), where the court found that the evidence was sufficient to make a submissible case for the jury. The evidence showed that McClinton was driving a car containing stolen property. There were several passengers in the car. McClinton was placed at the scene of the crime, with the opportunity to commit the crime, at the time the crime allegedly occurred. See also *State v. Arnold,* supra, where a submissible case based on an inference of guilt was made when Arnold was riding as a passenger in a car with stolen goods in the trunk. The police stopped the automobile a few blocks from the scene of the crime soon after it occurred. Arnold could be placed at the scene of the burglary, along with an opportunity to commit the crime.

*Instructions.*

■ Appellant next claims the court erred in the verdict-directing instructions.[2]

---

1. The evidence shows that the police arrested Dodson, Neighbors and Sheets. According to Dodson, her third companion, Ginny Judd, was visiting her boyfriend when the arrest occurred.

2. Verdict-directing instruction 7 reads as follows:

"As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

"First, that on or about February 3, 1980, in the County of Putnam, State of Missouri, certain persons with the aid or attempted aid of the defendant committed the offense of stealing without consent property, including clothing and medical supplies, of a value of at least $150.00 owned by or in the possession of Brian Mahan, and

"Second, that the defendant, either before or during the commission of the offense of stealing without consent property of a value of at least $150.00 with the purpose of promoting its commission aided such other persons in committing that offense, then you will find the defendant guilty under Count I of stealing without consent property of a value of at least $150.00.

"However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

The three criticisms of the instructions are (1) that the court used MAI 2.12 as a pattern, rather than the correct 24.02.1; (2) that the instruction did not, by a separate numbered paragraph, require the jury to find that defendant had taken the allegedly stolen property "for the purpose of withholding it permanently from the owner"; and (3) that the instruction did not by a separate numbered paragraph require a finding the property had a value in excess of $150.

It appears that either MAI–CR2d 2.12 (which was the one used) or MAI 24.02.1 would have been appropriate in this case. *State v. Murray,* 630 S.W.2d 577 (Mo. banc 1982). The instruction form used here is "required—requested or not" in the appropriate case. In this case the state's theory, based upon the evidence, was that defendant was an "active participant or aider". In such a case, MAI–CR2d 2.12 is required to be given, MAI–CR2d 2.10, Notes on Use 3.

If MAI–CR2d 2.12 is used, the crime "initially contemplated" by the culprits must be defined by a separate instruction, Notes on Use 5. Such separate instruction was given in this case. Instruction No. 6 defined "stealing" as follows: "A person commits the crime of stealing if he appropriates property of another with the purpose of depriving him thereof, without his consent."

Reading Instructions 7 and 8, patterned upon MAI–CR2d 2.12, together with the instruction defining the crime of stealing (Instruction 6 above), the jury was accurately advised of the facts which they were required to find in order to find defendant guilty. It is true, as appellant complains, that elements of appropriation with the intent to deprive the owner thereof, and the element of value, were not set out in separate numbered paragraphs as required by

"If you do find the defendant guilty under Count I of stealing without consent property of a value of at least $150.00, you will assess and declare the punishment at:
"1. Imprisonment in the Division of Corrections for a term fixed by you, but not less than two years and not to exceed seven years.

MAI–CR2d 2.04, Notes on Use 2. But the failure to observe this requirement has never been held to constitute prejudicial error, and we do not find it to be so in this case. *See State v. Flowers,* 630 S.W.2d 585 (Mo. App.1981); *State v. Simpson,* 614 S.W.2d 31, 33[3] (Mo.App.1981); *State v. Clark,* 607 S.W.2d 817, 821[5] (Mo.App.1980); *State v. Brown,* 607 S.W.2d 881, 886[8] (Mo.App. 1980). For a more detailed discussion of the problem discussed here, *see State v. Flowers,* supra.

*Prosecutor's jury argument.*

■ In her final point, appellant charges that the trial court erred in failing to grant her request for a mistrial because of prejudicial argument by the prosecuting attorney. In his closing argument, the prosecutor reviewed the evidence of the husband of the proprietor of the store in which Dodson and her companions were looking before they were arrested. In his testimony, the witness had stated that Dodson, Sheets and Neighbors were "canvassing" the store. This testimony was admitted without objection. In reviewing this evidence, the prosecutor substituted the word "casing" for "canvassing". After Dodson's attorney objected, the court instructed the jury to disregard the statement relative to casing. Appellant's motion for a mistrial was overruled. On appeal, Dodson alleges that the statement was made with the intent to create the inference that appellant committed another crime for which she was not charged or being tried. Accordingly, the argument deprived appellant of a fair and impartial trial.

In his closing argument, the prosecutor may discuss the facts in evidence and reasonable inferences therefrom. *State v. Bolden,* 525 S.W.2d 625, 634 (Mo.App.1975). The prosecutor's argument cannot go to such lengths as to excite, inflame or appeal

"2. Imprisonment in a county jail for a term fixed by you, but not to exceed one year."
Instruction 8 was identical to Instruction 7, but hypothesized the Judd theft.

to prejudices. *State v. Nichelson,* 546 S.W.2d 539, 543 (Mo.App.1977). The trial court has considerable discretion in deciding whether to grant a mistrial because of the prosecutor's argument. The trial judge may refuse to grant a mistrial if under the circumstances he does not believe injustice to the defendant will result. The trial judge has wide latitude in taking steps he feels are necessary to correct any abuses. *State v. Sheard,* 276 S.W.2d 191, 195 (Mo. 1955). In this case, the trial judge corrected any prejudice caused by the prosecutor's remarks when he instructed the jury to disregard the statement.

For the foregoing reasons, the judgment is affirmed.

All concur.

