STATE of Missouri, Respondent,

v.

Ernest L.C. ROBINSON, Appellant.

No. 48383.

Missouri Court of Appeals,
Eastern District,
Northern Division.

May 21, 1985.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 12, 1985.

Application to Transfer Denied
Sept. 10, 1985.

Robert Wolfrum, St. Charles, for appellant.

William L. Webster, Mark A. Richardson, Jefferson City, for respondent.

CRIST, Judge.

Appeal from a conviction by a jury of burglary in the second degree, for which defendant was sentenced as a persistent offender to fifteen years' imprisonment. We affirm.

■ Defendant questions the sufficiency of the evidence. We view the evidence in the light most favorable to the verdict, and draw all inferences favorable to it. As the evidence produced at trial was circumstantial, the facts and circumstances proved must be both internally consistent and consistent with the hypothesis of defendant's guilt, and the facts and circumstances must be inconsistent with any reasonable hypothesis of defendant's innocence. *State v. Robinson*, 670 S.W.2d 541, 542 (Mo.App. 1984).

This is a companion case to *State v. Robinson*, 684 S.W.2d 529 (Mo.App.1985) (*Robinson I*). *Robinson I*, like the instant case (*Robinson II*), was not a strong circumstantial evidence case. This court found sufficient evidence in *Robinson I* for a jury issue. *Robinson I*, 684 S.W.2d at 531. However, some of the evidence in *Robinson I* was not admitted into evidence here, and the evidence of *Robinson II* showing a burglary of a store in Clarksville, Missouri, essentially was used in *Robinson I* to show defendant and Plant earlier had burglarized a grocery store in Center, Missouri. 684 S.W.2d at 531. The question for resolution is whether evidence of the burglary in Center, Missouri was essential to submissibility in *Robinson II*.

■ Evidence in both cases showed that at 8 o'clock in the evening on April 26, 1983, Robert Harry Plant, a black male, rented a light green 1977 Dodge Van with Ohio license plates from a rental agency in St. Louis County. Defendant, another black male, was with Plant.

Established in *Robinson I*, but not in *Robinson II*, was that at about 1 a.m. the next morning, a light green van with out-of-state license plates, driven by two black males (remarkable because no blacks lived in Center) was observed proceeding through Center. A Center, Missouri grocery store was robbed. Analysis of two crowbars found near the burglary scene in Clarksville revealed the bars physically fit indentations on the wood of the Center grocery store doors; and paint chips on the bars were identical to the paint originally on the Center grocery store. The van was later found in Clarksville, Missouri with stolen merchandise from the Center grocery store.

The remainder of the evidence was presented in both cases. At about 4:30 the next morning, in Clarksville, Missouri, a witness (Cagle), looking from a balcony, saw two black males walk down the street. He was later able to identify one of these men as Plant, and observed the other man had a limp which was similar to a limp defendant had one week later. Cagle went inside his home and told his step-father (Slaughter) he believed someone was going

to rob a local store. Cagle went back out on the balcony, heard "wood cracking sounds" coming from Cooper's IGA Store, and ran back inside to tell Slaughter.

Upon returning outside, Cagle saw one man pushing a shopping cart into an alley. Slaughter came out on the balcony and saw two carts go up an alley beside the store. He put on his shoes and went down to the street where he saw two black males pushing a cart into the street. Cagle had gone to Slaughter's motorcycle, started it, and turned on its headlight. The men pulled the carts back into the alley. Cagle and Slaughter went into the alley and found the men had fled, leaving the carts behind.

Slaughter could not identify either subject. He described them to the police as being two non-local black males, one about 5'10" to 6' tall, and the other one about 5'6" to 5'8" tall. A few hours later, two non-local black males were arrested walking about 5 miles outside Clarksville. Plant, upon arrest, gave a false name; defendant gave his correct one. Cagle identified Plant and defendant, whom Cagle saw one week later, had a limp like that of the other black male he saw that morning.

Investigation at the Cooper IGA Store disclosed that the doors had been forced and the door frame broken. Over eighty cartons of cigarettes were missing. They were found in two shopping carts which were discovered about three-quarters of a block away from the store. The area around the store was searched to find any vehicles which might belong to any suspects. The 1977 light green Dodge Van with Ohio license plates was found in Clarksville. A search of the van revealed a copy of a lease agreement signed by Harry Plant.

To summarize, defendant and Plant, two black males, were together and were identified by the witness who rented Plant the van in St. Louis County at 8 p.m. At about 4:30 the next morning, Plant and a man who walked with a limp similar to the defendant's limp were observed with stolen goods in the vicinity of the burglarized Clarksville store. Clarksville is a small, rural town. These two men fled on foot, leaving the rented van in Clarksville with a copy of Plant's van rental agreement. The police were given a description of two non-local black males. They found defendant and Plant walking about 5 miles outside Clarksville that same morning. There was little doubt Plant was one of the burglars. Defendant's presence with Plant at the renting of the van, Plant's identification and defendant's identification at the burglary scene as a non-local black man with a limp similar to defendant and his presence with Plant outside Clarksville at the time of the arrest indicates defendant was Plant's accomplice and created a fact question for the jury. Therefore, we believe this evidence was sufficient. *State v. Sheets*, 641 S.W.2d 112, 114 (Mo.App.1982).

■ Defendant raises several other points, which are all meritless and may be summarily answered. The trial court did not err in allowing the state to amend the information, on the morning of the trial, to allege defendant acted in concert with Mr. Plant. The amendment did not hinder the defense, nor did it call upon defendant to meet evidence he would not have otherwise anticipated. *State v. Mick*, 680 S.W.2d 170, 172 (Mo.App.1984).

■ The trial court, likewise, did not err in the admission, over defendant's hearsay objection, of evidence that when Plant was arrested he gave a false name. See *State v. Stufflebean*, 604 S.W.2d 737, 741–42 (Mo.App.1980); *State v. Rocha*, 526 S.W.2d 834, 838 (Mo.App.1975). Defendant attempts in this court to enlarge the objection made at trial to include the question of relevance. Such attempts to enlarge objections made at trial cannot be allowed. *State v. Cannady*, 660 S.W.2d 33, 37 (Mo. App.1983). There was also no abuse of discretion in denying defendant's motion for mistrial following a passage in the state's rebuttal argument. Defendant's objection was explicitly sustained and the prosecutor did not return to the objectionable material. *Id.* at 40.

Defendant also complains of the court's use of an instruction submitted by defendant informing the jury they were to sentence defendant only if defendant was found guilty of burglary, which was indeed an erroneous submission. He also complains of the trial court's oral corrective instruction, given again at defendant's behest, which defendant claims was confusing and erroneous. Defendant is hardly in position to claim error in the use of the original instruction, as he submitted it, or on the oral corrective instruction, as he requested it. *State v. Preston*, 673 S.W.2d 1, 9[21] (Mo. banc 1984). Additionally, the alleged errors were contained in an instruction on punishment for an offense of which defendant was not convicted. *State v. Blackmon*, 664 S.W.2d 644, 650[19] (Mo. App.1984). The instructions, read as a whole, correctly instructed the jury. While we do not condone this procedure, we fail to see any prejudice to the defendant in the instant case, and therefore find no cause for reversal. *Id.* at 650[18].

Defendant also objected to a witness's identification of his limp, claiming it was the fruit of an arrest without probable cause. His motion to suppress the identification was overruled, as was his objection at trial. Probable cause for the arrest existed, given the fact defendant and Plant fit the description, in terms of race, locality, and height which was given to the police, the location of the arrest, and the activities preceding their arrest. *See State v. Tate*, 658 S.W.2d 940, 945–46 (Mo.App. 1983).

Finally, defendant asserts the information insufficiently charged him with being a persistent offender, because it did not use the term "persistent offender" and did not cite the statutory sentencing provisions. The information did specify six earlier felony convictions, which was sufficient to put defendant on notice the state was seeking to enhance the punishment. We fail to see, even assuming there was any error in the information, how defendant was prejudiced. *State v. Stapleton*, 661 S.W.2d 620, 621–22 (Mo.App.1983).

Judgment affirmed.

DOWD, P.J., and CRANDALL, J., concur.