STATE of Missouri, Respondent,

v.

Larry GRIFFIN, Appellant.

No. 63315.

Supreme Court of Missouri,
En Banc.

Dec. 20, 1983.
Rehearing Denied Jan. 17, 1984.

illegal trade near the intersection of Sarah and Olive Streets in St. Louis, six blocks from his parent's place of abode.

Defendant, a black male, was the brother of Dennis Griffin. Reginald Griffin was a nephew of defendant and Dennis. Prior to the killing of Quintin Moss, the defendant and Reginald lived together with defendant's sister.

In the early hours of January 2, 1980, Quintin Moss and Dennis Griffin arrived at the Moss apartment, awaking Mr. and Mrs. Moss by knocking on the door and ringing the doorbell. Following an argument between Quintin and his father, the latter objecting to his son's bringing "that kind of person home with him", Dennis departed the premises. A short time later he was killed in an alley behind the Moss apartment. About a week later Quintin Moss was arrested for this killing but subsequently released by the authorities. Thereafter, according to Mrs. Moss, she was the recipient of telephoned threats against her son's life because of the killing of Dennis Griffin. She opined the unidentified telephone caller was a "black male".

*May 13, 1980:* At about 2:00 or 2:15 in the afternoon, Quintin Moss and Robert Campbell, a black male, were together near the intersection of Sarah and Olive Streets. About 2:30 p.m. a black over brown older model Cadillac automobile, occupied by two black males, drove up and stopped. One of the occupants stepped out of the vehicle and fired four or five pistol shots in the direction of Quinton Moss and Robert Campbell, one bullet striking and wounding Campbell. The Cadillac, containing the two unidentified black males, then sped away. A short time later Quintin Moss was seen beneath his bicycle at the scene of the shooting.

Mrs. Moss was at her home when she saw her son ride up on his bicycle. Quintin was visibly disturbed and upset and exclaimed he had just been shot at and showed her a dent on his new bicycle. He asked his mother to take him back to the scene of the shooting and she did so.

Frederick M. Steiger, St. Louis, for respondent.

John C. Reed, Asst. Atty. Gen., Jefferson City, for appellant.

BILLINGS, Judge.

Defendant Larry Griffin, 26 years old at the time of trial, was convicted of the capital murder of Quintin Moss by a jury in the Circuit Court of the City of St. Louis and sentenced to death. He seeks reversal, contending there was prejudicial error in the court's instructions to the jury and in admitting certain evidence in the guilt phase of his trial. He also avers prejudicial error was committed in the reception of other evidence at the penalty stage of the trial and that the death penalty violates the Federal Constitution. We affirm.

Although defendant does not directly attack the sufficiency of the evidence to support his conviction, we think it helpful in considering his several points to set forth in some detail the facts and reasonable inferences arising therefrom which the jury could reasonably have found in arriving at their verdict, ignoring contrary evidence and inferences. *State v. Franco,* 544 S.W.2d 533 (Mo. banc 1976), *cert. denied,* 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977).

Quintin Moss, a 19-year-old black male, lived with his parents in St. Louis. The record in this case leaves little room for doubt that he was involved in the illicit trafficking of drugs and that he plied his

At about 3:00 p.m., a police officer saw defendant and Reginald Griffin in a black over brown 1968 Cadillac automobile about three miles from the shooting scene. Reginald was driving the vehicle. When the officer, driving an unmarked police car, pulled up alongside the Cadillac and displayed his badge, the Cadillac accelerated and drove away. A chase ensued for some distance before the police officer's car and another detective's car forced the Cadillac to a stop. Reginald Griffin was arrested for multiple traffic violations. No weapons were found.

*June 26, 1980:* Officer Jones, off duty at the time, was driving past 3656 Cook Street at about 4:00 p.m. He saw three black males near the house. He recognized defendant ("known to be a police character"), a second person wearing a red and white baseball cap, and a third person carrying what appeared to the officer to be a shotgun. Because of heavy traffic, Officer Jones was delayed in circling the block to investigate what he had observed. By the time he returned, the three men had disappeared.

State's witness Robert Fitzgerald, a white male, was standing beside his car at about 4:30 p.m. near the intersections of Sarah and Olive Streets while two other men were attempting to repair it. Fitzgerald had earlier observed Quintin Moss in the vicinity and concluded Moss was engaged in selling narcotics. Moss was standing on the sidewalk near Fitzgerald's car when Fitzgerald saw a faded blue 1967 or 1968 Chevrolet drive up and stop behind his car. There were two black males in the front seat and a third in the rear seat. There was a burst of gunfire from the Chevrolet and Fitzgerald saw the defendant firing a pistol through the open window of the passenger side of the front seat of the car. The person in the rear seat was firing a semi-automatic rifle. The direction of the shots was towards Moss and he was struck 13 times by bullets. A passerby, Wallace

Connors, was struck in the buttocks by one of the bullets. Fitzgerald had an unobstructed view of the defendant throughout the shooting and as the Chevrolet drove away. Fitzgerald saw the license plate on the rear of the car and memorized the number. He provided this information to the police and accompanied the officers to the police station where he identified defendant from a group of photographs as being the person firing the pistol from the front seat of the Chevrolet. A short time later Fitzgerald identified the Chevrolet as the vehicle which had been at the scene of the killing.

The 1968 Chevrolet was parked behind an apartment building and was unoccupied. In the vehicle the officers found a .30 caliber semi-automatic rifle, which contained a clip containing seven live rounds of ammunition, empty rifle shell casings, a .38 caliber revolver, a red and white baseball cap, and a court receipt bearing the name "Reginald Griffin". When fully loaded the clip for the carbine would hold 31 rounds of ammunition. There was expert testimony that a bullet fragment found at the scene of the killing of Quintin Moss had been fired by the carbine, which Officer Jones testified was similar in appearance to the firearm one of the black males was carrying at the Cook Street address about 4:00 p.m. Officer Jones also testified the red and white cap was similar to the one he saw being worn by one of the two unidentified black males earlier. A .38 caliber bullet fragment found at the shooting scene was of the same general classification of the revolver found in the Chevrolet. Fitzgerald testified this revolver was similar to the one he saw defendant firing at Moss.

■ Defendant first asserts[1] that "the trial court committed prejudicial error in not properly instructing the jury regarding the proof required to find defendant guilty as a coparticipant in the charged events because the verdict director instruction failed to conform to the required MAI–CR

---

1. In considering defendant's various points, the writer has borrowed liberally from the Per Curiam opinion handed down on June 30, 1983.

2d form in that the first paragraph of the verdict director instruction contained language significantly different than that prescribed in MAI–CR 2d 2.12."

Instruction No. 6 reads as follows:

"If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about June 26, 1980 in the City of St. Louis, State of Missouri, the defendant or another person caused the death of Quintin Moss by shooting him, and

Second, that the defendant and another person intended to take the life of Quintin Moss, and

Third, that the defendant and another person knew that they were practically certain to cause the death of Quintin Moss, and

Fourth, that the defendant and another person considered taking the life of Quinton Moss and reflected upon this matter coolly and fully before doing so,

then you are instructed that the offense of capital murder was committed, and if you further find and believe from the evidence beyond a reasonable doubt:

Fifth, that in the commission of such offense the defendant acted with such other person with the purpose of committing that offense,

then you will find the defendant guilty of capital murder.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense."

This case was tried in June 1981. Instruction No. 6 should have been in the form prescribed in MAI–CR 2d 2.12, effective January 1, 1979. However, the giving of Instruction No. 6 by the trial court was not prejudicial error. Instruction No. 6 followed the MAI–CR 2d 2.12 form adopted by Order of this Court entered April 14, 1981. That Order provided that the form adopted on said date "must be used on and after January 1, 1982, and may be used prior thereto and any such use will not be presumed to be in error."

■ Defendant next contends that "the trial court committed prejudicial error in refusing to give MAI–CR 2d 3.42 the circumstantial evidence instruction as requested by defense counsel because said instruction was appropriate in defendant's case and proper under the applicable case law and MAI Notes on Use in that the bulk of the evidence presented at trial was circumstantial and much of the evidence was of a conflicting and inconsistent nature and MAI–CR 2d 3.42 would greatly have aided the jury in properly evaluating the evidence." Defendant concedes that both direct and circumstantial evidence were presented. "Where the evidence, as here, is partially direct and partially circumstantial, it is not necessary to give a circumstantial evidence instruction and the test as to submissibility is not that of a purely circumstantial evidence case." *State v. Baldwin,* 571 S.W.2d 236, 240 (Mo. banc 1978). The point is denied.

■ Defendant continues that "the trial court abused its discretion in denying defendant pre-trial motion in limine and in admitting over defendant's renewed objection at trial testimony regarding the assault on Robert Campbell because said testimony was irrelevant and its probative value was outweighed by its inflammatory and prejudical nature in that said evidence did not prove or disprove any fact in issue in this cause, none of the testimony presented either linked the assault on Campbell to appellant or to the charged crime herein, and that the testimony only served to draw the jury's attention away from the factual issues that it was called upon to resolve and thereby hinder the jury's ability to decide the principal case upon its merits."

From the circumstantial evidence about which defendant complains, a rational finder of fact could have concluded that defendant attempted to kill Quintin Moss on May 13, 1980, as Moss and Campbell stood within a few feet of the intersection of Sarah and Oliver. "Relevant evidence is not inadmissible because it is prejudicial." *State v. Wood,* 596 S.W.2d 394, 403 (Mo. banc), *cert.*

*denied,* 449 U.S. 876, 101 S.Ct. 221, 66 L.Ed.2d 98 (1980).

The firing on Campbell, standing alone, would not be relevant and would therefore be inadmissible. But the evidence surrounding the May 13 event involved Quintin Moss, and Campbell was merely incidentally involved as was Wallace Connors in defendant's June 26, 1980, successful effort to "get" Moss.

The relevancy of the evidence is thus to show a common scheme or plan and would therefore not be inadmissible because of its disclosure of another crime. *State v. Williams,* 652 S.W.2d 102, 110 (Mo. banc 1983); *State v. Shaw,* 636 S.W.2d 667, 671 (Mo. banc 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 239, 74 L.Ed.2d 188 (1982). In fact, this situation bears many of the marks of *State v. White,* 621 S.W.2d 287, 294–95 (Mo. 1981), in which a victim's excited utterance of a prior attempt on her life was acceptable as part of a continuing scheme to kill her. Admittedly, the facts here do not present the strongest possible case. But the admission of the May 13 attack is not prejudicially erroneous.

The salient facts of the May 13 incident are as follows: Police responded to a shooting report at Sarah and Olive and found a bleeding and dazed Robert Campbell. Quintin Moss was beside him. Campbell related that a black over brown "older Cadillac" carrying two negro males stopped. One of the occupants alighted and fired several shots from a gun, one of which struck Campbell in the leg.

Within a half hour of the May 13 attack in which Campbell was wounded, police spotted Reginald and Larry Griffin in a black over brown 1968 Cadillac about three miles from the point of assault. Reginald was driving. When the Cadillac occupants observed police, they sped away to be caught shortly thereafter in a high speed chase. Both Reginald and Larry were inside the vehicle when ultimately stopped.

The fact that the black over brown Cadillac was found to be with only two doors rather than four doors as initially reported is not critical; the jury can assess that matter. Nor does the general description of the vehicle as given provide less reason for the police to be substantially suspicious, give chase and stop. *State v. Carter,* 572 S.W.2d 430, 435 (Mo. banc 1978) and *State v. Clark,* 607 S.W.2d 817, 819–20 (Mo.App. 1980) provide ample basis for the admission of evidence regarding the Cadillac despite the minor discrepancies concerning its description. It was close enough in time, proximity and identity to allow its part in the episode to be given substantial billing.

■ Mrs. Moss related through the excited utterance of her son Quintin that he was the intended victim of a shooting shortly after its occurrence. Under the facts as related, Quintin's statement that he "just had been shot at" qualifies for admission as an excited utterance. *State v. White,* 621 S.W.2d at 295; *State v. Rogers,* 585 S.W.2d 498, 504 (Mo.App.1979). The jury could reasonably find that the statement was uttered shortly after an unusual occurrence while Quintin was under the effects of the episode and in an uncontrolled state of mind.

In *State v. Van Orman,* 642 S.W.2d 636 (Mo.1982), at 639, we said:

The essential test for admissibility of a spontaneous statement or excited utterance is neither the time nor place of its utterance but whether it was made under such circumstances as to indicate it is trustworthy. The rationale of this exception to the hearsay rule is that where the statement is made under the immediate and uncontrolled domination of the senses as a result of the shock produced by the event, the utterance may be taken as expressing the true belief of the declarant. *State v. Rogers,* 585 S.W.2d 498 (Mo.App.1979).

Under the evidence presented, we hold that both the statement of Robert Campbell and that of Quintin Moss were admissible as spontaneous statements or excited utterances. Considered together, they demonstrate a common scheme or plan to kill Quintin Moss and circumstantially point to the defendant. We find no prejudicial error.

■ Defendant contends that "the trial court committed prejudicial error in overruling defense counsel's objection to and admitting into evidence over said objection the testimony of state's witness Missouria Moss repeating verbal threats she heard from unknown individuals over the telephone because said evidence was inadmissible hearsay in that it was in court testimony of an extra judicial statement that was offered to prove the truth of the matters asserted therein."

First of all, the record discloses a proper and timely objection was not made by defendant to the question, nor was there a proper motion made to strike Mrs. Moss' answer. Further, there was no ruling by the court on defendant's tardy objection. Consequently, the point is not preserved for our review. Plain error review is not warranted. The point is denied.

Defendant next asserts that "the trial court committed prejudicial error in overruling defense counsel's objection to and admitting into evidence over said objection the testimony of state's witness Missouria Moss reciting statements made to her by her son Quintin Moss because such evidence was inadmissible as hearsay and was not within the excited utterance exception to the hearsay rule in that the statement was not made under the immediate and uncontrolled domination of the senses as a result of the shock produced by the event and therefore the utterance was not sufficiently trustworthy to be admitted as an exception to the hearsay rule."

As indicated, *supra,* we are of the opinion that Quintin Moss' statement to his mother falls within the spontaneous statement or excited utterance exception to the hearsay rule, and, therefore, admissible. *State v. Van Orman, supra.*

■ Defendant claims that "the trial court committed prejudicial error in overruling defendant's motion to strike from the transcript herein portions of the presentence investigation read into the record by the trial court at the time of sentencing because the information that was read into the record was irrelevant and highly prejudicial to the defendant in that it concerned matters occurring subsequent to the jury's determination as to guilt and punishment in this cause."

The information read into the record is pertinent to our determination "[w]hether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." Section 565.014, RSMo 1978. *See Banks v. State,* 237 Ga. 325, 227 S.E.2d 380 (1976). The point is denied.

■ Defendant avers that "the trial court abused its discretion in overruling defense counsel's objection to and admitting into evidence over said objection during the punishment determination portion of defendant's trial three close-up eight by ten inch color photographs of the wounds suffered by the victim in this cause because the prejudicial and inflammatory impact of these photographs greatly outweighed their probative value in that these photographs were entirely cumulative in nature as extensive testimony had been presented at trial detailing the number, nature, location, and type of wounds received by the victim and the jury had already viewed a photograph of the victim's body showing said wounds."

The trial judge stated into the record that he believed the photographs were pertinent to the statutory aggravating circumstance which the state was required to prove beyond a reasonable doubt. *See* § 565.012.2(3), RSMo 1978. We agree. The point is denied.

■ Defendant finally contends that "the imposition of the death penalty in this case constitutes cruel and unusual punishment in violation of the eighth and fourteenth amendments to the Constitution of the United States because the statutory aggravating circumstance applied herein is unconstitutionally vague both on its face and as applied in that it is susceptible to widely differing interpretations thereby causing the death penalty to be imposed in an arbitrary and capricious manner."

The statutory aggravating circumstance found presented in this case by the jury was that the accused "by his act of capital murder knowingly created a great risk of death to more than one person in a public place by means of a weapon or device which would normally be hazardous to the lives of more than one person .... " Section 565.012.-2(3), RSMo 1978.

In *Liverpool, New York and Philadelphia S.S. Co. v. Commissioners of Emigration,* 113 U.S. 33, 39, 5 S.Ct. 352, 355, 28 L.Ed. 899 (1885), the United States Supreme Court warned against a court formulating "a rule of constitutional law broader than is required by the precise facts to which it is applied."

In *Godfrey v. Georgia,* 446 U.S. 420, 428, 100 S.Ct. 1759, 1764, 64 L.Ed.2d 398 (1980), the United States Supreme Court held "that if a State wishes to authorize capital punishment it has a constitutional responsibility to tailor and apply its law in a manner that avoids the arbitrary and capricious infliction of the death penalty."

Mindful of the *Liverpool* caution, and of the *Godfrey* constraint, we confine our holding to the facts in this particular case. According to the evidence, defendant created "a great risk of death" to at least seven persons by means of weapons sufficiently hazardous to strike the body of Quintin Moss thirteen times and to wound Wallace Connors. In our view, the finding by the jury of the statutory aggravating circumstance is constitutionally permissible.

Section 565.014.3(1), RSMo 1978, also mandates that this Court determine whether "the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor .... " The record demonstrates that the death sentence was not imposed under the influence of passion, prejudice, or any other arbitrary factor.

Finally, § 565.014.3(3), RSMo 1978, mandates that this Court determine whether "the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." This is the first case in which this Court has reviewed the imposition of the death penalty on the basis of the aggravating circumstance specified in § 565.012.2(3), RSMo 1978. Those cases in which both death and life imprisonment were submitted to the jury and which have been affirmed on appeal have been reviewed. *State v. Mercer,* 618 S.W.2d 1, 11 (Mo. banc), *cert. denied,* 454 U.S. 933, 102 S.Ct. 432, 70 L.Ed.2d 240 (1981). They do not point to excessiveness or disproportionality in the sentence in this case.

The judgment is affirmed.

RENDLEN, C.J., and WELLIVER, HIGGINS, GUNN and DONNELLY, JJ., concur.

BLACKMAR, J., dissents in separate opinion filed.

Execution date set for February 3, 1984.

BLACKMAR, Judge, dissenting.

Judge Billings' able opinion deals correctly with most of the issues in this case, which was generally well tried. I regret that I cannot join in the affirmance, but I believe that the defendant was improperly burdened by evidence, which should not have been admitted, of the May 13, 1980 shooting involving Robert Campbell. The only eyewitness to the murder had a seriously flawed background, and his ability to observe and identify the gunman was also subject to question. The error, then, was prejudicial, and the only solution is a new trial.

I.

The principal opinion properly observes that, in a capital murder case, evidence of a prior attempt by the defendant on the victim's life is highly relevant in showing a continuing scheme or plan and in establishing the element of deliberation. By the same token, however, evidence which indicates the defendant's involvement is highly prejudicial if the defendant is not sufficiently tied into the prior attempt. There have been numerous reversals because the prosecution offered evidence of prior and

relevant criminal conduct, without sufficiently tying the defendant into the prior offenses.[1]

A lesson from the pages of history should be helpful. The famous case of *State v. Hyde,* 234 Mo. 200, 136 S.W. 316 (1911), involved a charge of murder of Colonel Thomas Swope, longtime resident of Jackson County and civic benefactor. The defendant, a physician, was his nephew by marriage. The prosecution claimed that Dr. Hyde had hastened Colonel Swope's death by deliberately prescribing medication which produced a lethal accumulation of arsenic. In an effort to bolster its case the prosecution tried to show that the defendant had used his medical knowledge in an effort to kill other members of the Swope family, by excessive bleeding of a stroke victim, and by introducing typhoid germs into food or water. The suggested motive was to increase his wife's inheritance. This Court reversed the conviction because it concluded that the state had not established homicide or attempted homicide in regard to the other members of the family. The defendant, therefore, was burdened by improper innuendo in making his defense.

Nobody identified the defendant as the perpetrator of the May 13 shooting. The only link to him is Robert Campbell's hearsay statement that the gunman was riding in a black-over-brown *four-door* older Cadillac, and the defendant's presence as a passenger in a black-over-brown *two-door* Cadillac.

No eyewitness to the May 13 shooting even testified. The state relied entirely on the testimony of a police officer who interviewed Campbell at the scene. Campbell had been wounded in the leg. He lost substantial blood and was in a dazed condition. He described the gunman's car in response to a police officer's question.

Although the admission of Campbell's statements as "excited utterances" goes beyond any reported Missouri case applying this particular exception to the hearsay rule,[2] the conclusion is in line with the liberal view of modern authorities such as the Federal Rules of Evidence.[3] The holding will permit the introduction of evidence both in civil and criminal cases which would have been rejected under the prior law. But I do not disagree strongly with the majority on this particular portion of the court's holding.

The problem is that the police officer who interviewed Campbell definitely committed himself to Campbell's description of a four-door automobile. It makes no difference that the officer did not disclose the number of doors on direct examination. He read from his report, and agreed that he got the number of doors from the witness. It is almost as though the prosecution hoped that the full description of the car would not come out. The problem here is one common to hearsay exceptions. The declarant's statements are immutable. There is no leeway for exploring matters of degree.

The car in which the defendant was riding as a passenger was photographed and found to have only two doors. This appears with definiteness and certainty. Even without this discrepancy, one might wonder whether the description by make and color would be sufficient, in the absence of testimony about the number of similar cars. *Cf. State v. Greer,* 655 S.W.2d 593 (Mo.App. 1983). But we need not pursue the point, because the police did not find the same vehicle that the wounded witness described.

**1.** *State v. Hancock,* 451 S.W.2d 6 (Mo.1970); *State v. Strickland,* 530 S.W.2d 736 (Mo.App. 1975); *State v. Crane,* 559 S.W.2d 294 (Mo. App.1977); *State v. Lamb,* 468 S.W.2d 209 (Mo.1971). *State v. Reese,* 364 Mo. 1221, 1227, 274 S.W.2d 304, 307 (1954), mentions the "dangerous tendency" of this kind of evidence.

**2.** This descriptive statement goes well beyond those involved in such recent cases as *State v.* *White,* 621 S.W.2d 287, 294 (Mo.1981); *State v. Rogers,* 585 S.W.2d 498, 504 (Mo.App.1979); *State v. Jones,* 620 S.W.2d 17 (Mo.App.1981); *State v. Collins,* 607 S.W.2d 712 (Mo.App. 1980).

**3.** Rule 803(2), F.R.E. *See* 4 *Weinstein's Evidence* ¶ 803.2[4] (1981).

The principal opinion holds that "the jury" may resolve the discrepancy. How can the jury have any possible basis for saying that Campbell was wrong in the description he gave the police, and really intended to describe a different car? Cases holding that variation in description is not fatal to the existence of possible cause for stopping and searching a vehicle are not sufficient to supply the required connection for evidentiary purposes.[4] The police were undoubtedly justified in stopping the car in which the Griffins were riding, but this does not provide the link required before evidence of another crime can be admitted.

The state argued that it is not necessary to prove the required linkage beyond reasonable doubt. I do not disagree. The phrase, "reasonable doubt" is designed to be addressed to juries. The foundation for admission of evidence of other crimes is a question for the trial judge. Some substantial connection is necessary, however, as our cases repeatedly hold. Here the connection is lacking and the evidence should not have been admitted.

The prejudice is enhanced by the admission of evidence of threats against the life of Quintin, following the killing of Dennis Griffin. These threats were not tied to the defendant, and there was no occasion for admitting them. Their admission, standing alone, might not be prejudicial, because the jury might be expected to perceive the absence of a link, but here the prosecution was trying to plant in the jury's mind the suggestion that the defendant sought revenge against his brother's suspected killer. In contrast to the principal opinion, furthermore, I find the hearsay objection sufficient. The unconnected threats were not admissible for their own sake. *State v. Hicks,* 535 S.W.2d 308, 312 (Mo.App.1976). The prosecution sought to establish by innuendo the homicidal purpose of the voice on the other end of the line, and to relate it to

the killing of the defendant's brother. The objection sufficiently warned the trial judge of the problem and the prejudices.

But the primary error relates to the admission of the events of May 13. They are not relevant, because they were not connected up. The error is prejudicial.

## II.

The defendant challenges the capital murder verdict director, Instruction 6, on grounds, among others, as follows:

> Under the terms of the verdict directing instruction as given if another person caused the death by shooting him with no act, assistance, or involvement of any kind by the defendant appellant Larry Griffin . . .

there could be a conviction. I do not believe that the principal opinion responds fully to this point.

This claim is supported by the language of the instruction. Under the instruction the jury could return a verdict of guilty if it were to find as follows:

First, that the defendant *or A* caused the death of Quintin Moss;

Second, that the defendant *and B* intended to take the life of Quintin Moss;

Third, that the defendant *and B* knew they were practically certain to cause the death of Quintin Moss;

Fourth, that the defendant *and B* considered taking the life of Quintin Moss and reflected on the matter coolly;

Fifth, that in the commission of such offense the defendant acted *with B* for the purpose of committing that offense.

The complaint about Instruction No. 6 is well taken. There has been a serious problem in getting literate and comprehensible instructions in capital murder cases, especially when more than one defendant is

---

4. Cited are *State v. Carter,* 572 S.W.2d 430, 435 (Mo. banc 1978) and *State v. Clark,* 607 S.W.2d 817, 819–20 (Mo.App.1980), both of which dealt with the lawfulness of searches rather than with admissibility of evidence.

involved, and this Court has sustained instructions which are grammatical and rhetorical monstrosities, in addition to being legally ambiguous.[5] If the instruction here challenged had referred to "defendant and that other person" in the second, third, fourth and fifth hypotheses the fault would have been corrected. The defendant is entitled to instructions which are comprehensible.

This error, however, was not pointed out in the motion for new trial. Allegation 15 of that motion refers to a variance between the instruction given and MAI. The principal opinion correctly resolves this issue.

It is appropriate to insist on specific objection to instructions. My preference would be for requiring objections before the instructions are given, in the manner of Rule 30 of the Federal Rules of Criminal Procedure. An objection only in the motion for new trial comes too late to do any real good, but it is a firm requirement of our Rule 28.03. After examining the closing arguments, I am confident that the genuine issues were properly presented and that the jury was not misled or confused by the instruction, and so am unable to say that there was plain error in giving it.

### III.

Because of my conclusion that a complete new trial is required I do not reach the question of punishment. I do, however, have some observations.

The evidence showed a gangland-type assassination, with two gunmen firing semiautomatic weapons from a moving vehicle. The scene was a public street and the danger to more than one person was patent. I agree with the holding in the principal opinion that the evidence supports the aggravating circumstance found by the jury, that there is no indication that the jury acted

out of passion or prejudice, and that the sentence is not out of line with other cases in which the death penalty has been assessed. If one believes in capital punishment, and if the trial were free from error, this case would seem to be a particularly appropriate one.

On points not discussed I agree with the principal opinion. For the error described, however, the judgment should be reversed and the case remanded for a new trial.

5. *State v. Betts,* 646 S.W.2d 94 (Mo. banc 1983); *State v. McIlvoy,* 629 S.W.2d 333 (Mo. banc 1982); *State v. Newlon,* 627 S.W.2d 606 (Mo. banc 1982); *State v. White,* 622 S.W.2d 939 (Mo. banc 1981). It seems that, in an attempt to force instructions into the MAI–CR2d mold, prosecutors and judges have come up with instructions which violate both MAI and rules of ordinary good usage.