STATE of Missouri, Respondent,

v.

**Jimmie JACKSON, Appellant.**

No. 63932.

Missouri Court of Appeals,
Eastern District,
Division One.

March 1, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 23, 1994.

Tamara Detloff, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., F. Martin Dajani, Asst. Atty. Gen., Jefferson City, for respondent.

CRIST, Judge.

Defendant appeals his conviction for second degree robbery and sentence to fifteen years' imprisonment. We affirm.

In the light most favorable to the verdict, the following evidence was adduced at trial: In March of 1992, Mary Floyd (Victim), was a resident at the St. Louis Avenue Care Center. Defendant and Mary Clark (Co-Defendant) were Certified Nurse's Aids who worked at the facility. Victim wore a large diamond ring on her left ring finger, which the staff was unable to remove due to Victim's swollen knuckles.

At trial, Victim testified that on March 15, 1992 at approximately 7 p.m., Co-Defendant pushed Victim into a room without people. Co-Defendant then attempted to remove the ring from Victim's finger. Victim testified her finger began to bleed. Unable to remove the ring, Co-Defendant called Defendant into the room. Defendant removed the ring, telling Victim he was placing it in her nightstand drawer. However, Victim did not believe him. After they left, she immediately checked the drawer. The ring was missing. Victim's hand was swollen and bruised. Victim immediately went to the nurse's station and reported the missing ring. At trial, Victim identified Defendant and Co-Defendant as the perpetrators.

Defendant and Co-Defendant were both charged with second degree robbery. After

a jury trial, Defendant was convicted and appeals his conviction.

■ In Point I, Defendant contends the trial court erred in allowing six separate witnesses to testify regarding Victim's hearsay statements after the alleged crime occurred. Defendant argues the statements do not fall within an exception to the hearsay rule and admitting them infringed upon his right to due process of the law.

At trial, six witnesses testified to Victim's comments which identified Defendant and Co–Defendant as two persons who had stolen her ring. First, Michelle Floyd and Lenora Shepard, nurses at the nursing home, both testified that Victim approached them about 7 p.m. on March 15, 1992, and reported a missing ring. Michelle Floyd testified Victim was upset and hollering for help. Floyd then testified Victim described Defendant and Co–Defendant. Lenora Shepard's testimony was essentially the same. Shortly after Victim reported the crime, Lucy Gordon, the nursing home administrator, also spoke with Victim. Gordon was allowed to testify regarding Victim's description of her assailants. The security guard, Charles Jefferson, and the police officer investigating the crime, Officer Mack, simultaneously questioned Victim that evening at 7:40 p.m. Both were allowed to testify to her description of her assailants. Finally, Mary Whitelow, social service coordinator, spoke with Victim the next morning after the incident. At that time, Victim told Whitelow what had occurred and described her assailants. Whitelow testified without objection regarding these comments.

■ Neither Defendant nor Co–Defendant objected to the testimony of Charles Jefferson and Mary Whitelow. Where no objection is made to hearsay testimony, its admission is not plain error. Rule 30.20; *State v. Griffin,* 662 S.W.2d 854, 859[5] (Mo. banc 1983); *State v. Wallace,* 825 S.W.2d 626, 632[10] (Mo.App.1992); *State v. Lewis,* 809 S.W.2d 878, 879[3] (Mo.App.1991).

Regarding the other four witnesses' testimony, Defendant himself only objected to the testimony of Lucy Gordon. Only Co–Defendant's counsel objected to the other three. Assuming preservation of any error, we examine whether the trial court erred in admitting the testimony of the four witnesses.

■ We conclude the testimony of each witness was admissible under the "excited utterance" exception to the hearsay rule. Utterances made under stressful circumstances and relating to the event producing the stress are sufficiently reliable to require the trier of fact consider them, rather than being excluded by the trial judge at the threshold. *State v. Williams,* 673 S.W.2d 32, 34[1] (Mo. banc 1984). The essential test for determining the admissibility of an excited utterance is:

> neither the time nor place of its utterance but whether it was made under such circumstances as to indicate it is trustworthy. The rationale of this exception to the hearsay rule is that where the statement is made under the immediate and uncontrolled domination of the senses as a result of the shock produced by the event, the utterance may be taken as expressing the true belief of the declarant.

*Griffin,* 662 S.W.2d at 858[4], *quoting State v. Van Orman,* 642 S.W.2d 636, 639 (Mo. 1982); *See also, State v. Fischer,* 774 S.W.2d 495, 496–97 (Mo.App.1989). Further, the event and the statement need not be simultaneous so long as the statement is provoked by the excitement of the event and the declarant is still under the control of that excitement. *State v. White,* 621 S.W.2d 287, 295 (Mo.1981); *State v. Rogers,* 585 S.W.2d 498, 504[17] (Mo.App.1979). The criterion for admission is not the time nor place of the utterance, but the circumstances surrounding it which indicate its trustworthiness. *State v. Boyland,* 728 S.W.2d 583, 585[2] (Mo.App. 1987); *State v. Boyd,* 669 S.W.2d 232, 234[2] (Mo.App.1984).

The evidence indicates Victim made her statements describing her assailants while still under the excitement of the event. At the time of the event, Victim was about eighty-four years old. The ring was her engagement ring from her first husband, who died after seven years of marriage. Victim testified she immediately reported the crime. When she went to Nurses Floyd and Shepard, her hand was swollen, bleeding, and bruised. She felt sick to her stomach. Nurse Floyd testified Victim was excited and

# 126

upset, hollering, "help, help, help me" as she walked down the hallway. Nurse Shepard also testified Victim was very upset and excited. Victim blurted out, "he took my ring." When the nurses asked Victim who took it, she gave a description of Defendant and Co-Defendant. Gordon also testified Victim was upset and in tears when Gordon spoke with her. Officer Mack stated Victim was visibly upset while being questioned about the event. The evidence indicates Victim was still under the shock and excitement of the event and her statements describing her assailants are trustworthy. Furthermore, no prejudice results where Victim testified at Defendant's trial, and Defendant was able to fully cross-examine her about the events. *See, Fischer,* 774 S.W.2d at 497. Point denied.

■ In Point II, Defendant argues the trial court erred in overruling his *Batson* objection to the State's peremptory strikes of African–American Venirepersons Lorraine Boyle and Charlotte Williams. Defendant contends the reasons stated by the State for the strikes was clearly pretextual, indicating the State did exercise them in a racially motivated manner. We review the trial court's ruling only to determine if it is clearly erroneous. *State v. Pullen,* 843 S.W.2d 360, 362–63[3] (Mo. banc 1992).

The Supreme Court established the following procedure to be followed in addressing a *Batson* objection: (1) Defendant must raise the *Batson* challenge to specific venirepersons and identify the cognizable racial group to which they belong; (2) the State must then come forward with "reasonably specific and clear race-neutral explanations for the strike"; and (3) if the State does so, Defendant then has the burden of showing "the state's proffered reasons for the strikes were merely pretextual and that the strikes were racially motivated." *State v. Parker,* 836 S.W.2d 930, 939[12] (Mo. banc 1992); *see also, State v. Antwine,* 743 S.W.2d 51, 64 (Mo. banc 1987).

■ In determining whether the State exercised its peremptory challenges in a racially discriminatory manner, its stated reasons are regarded race-neutral unless a discriminatory intent is inherent in the stated reasons. *Pullen,* 843 S.W.2d at 362[1]. "To be

sufficient the explanation need only be race-neutral, reasonably specific and clear, and related to the particular case to be tried." *Parker,* 836 S.W.2d at 934[5].

■ Once a race-neutral reason has been stated, Defendant bears the burden of showing the reason is pretextual. *Id.* at 939[12]. In assessing whether Defendant has met his burden, the "chief consideration should be the plausibility of the prosecutor's explanations in light of the totality of the facts and circumstances surrounding the case." *Id.* at 939[13]. Any facts and circumstances detracting from or lending credence to the State's proffered reasons are relevant, including the existence of similarly situated white jurors who were not struck and the relevance between the reason given and the crime charged. *Id.*

■ After the State exercised its peremptory strikes, Defendant raised a *Batson* challenge to the strikes. The State averred it was striking Venireperson Lorraine Boyle because she worked with records and drugs in a pharmacy, and it believed the defense would argue the medication Victim was taking would affect her perception. In response, the following occurred:

> [DEFENSE COUNSEL]: Judge, I would object to this ruling and to [the State] striking this woman because there are other jurors similarly situated who are in the medical profession one way or the other, particular a nurse, she wasn't struck by the state and she looks at records and she's familiar with records, she was not struck by the state.

> [STATE]: The key distinction is she worked with patients, Ms. Boyle worked in a pharmacy directly. That's what it says on the jury sheet. What I think is they're going to make a lot of hay out of the drugs, the pharmacy have more contact with the drugs.

■ Regarding Venireperson Charlotte Williams, the State averred it was striking her because she worked with the mentally impaired at a state hospital, and it believed the defense was going to argue Victim was confused and had a mental handicap. In response, defense counsel pointed to other venirepersons who worked in the medical profession and had access to drugs.

After reviewing the record, we find the trial court did not clearly err in overruling Defendant's *Batson* objection. The reasons stated by the State are race-neutral. The reasons are supported by the record, are relevant to the case, and are not inherently discriminatory. Further, Defendant failed in his burden of showing the stated reasons were merely pretextual. Finally, the record reveals there are no similarly situated jurors who either worked solely with drugs or in a mental hospital. Point denied.

In Point III, Defendant contends the trial court plainly erred in submitting to the jury Instruction No. 4, patterned after MAI–CR3d 302.04. Defendant argues this instruction, which defines "reasonable doubt," suggests a higher degree of doubt than is constitutionally required for acquittal. We are bound by the decision of the Missouri Supreme Court, finding this instruction to meet constitutional requirements and that it merely explains to the jury the standard of guilty beyond a reasonable doubt. *See, State v. Griffin,* 848 S.W.2d 464, 469[8] (Mo. banc 1993). Point denied.

Judgment affirmed.

CRANDALL, P.J., and REINHARD, J., concur.